**AMOCO OIL CO., Plaintiff-Appellant,**

v.

**RAINBOW SNOW, et al.,
Defendants-Appellees.**

No. 83–2077.

United States Court of Appeals,
Tenth Circuit.

Nov. 19, 1984.

Robert S. Campbell, Jr., Salt Lake City, Utah (Richard B. Ferrari, Salt Lake City, Utah, with him on the brief) of Watkiss & Campbell, Salt Lake City, Utah, for plaintiff-appellant.

Bryce E. Roe, Salt Lake City, Utah (Janette Bloom, Salt Lake City, Utah, with him on the brief) of Roe & Fowler, Salt Lake City, Utah, for defendants-appellees.

Before SETH, BARRETT and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

Appellant, Amoco Oil Company (Amoco), appeals from a district court's decision denying Amoco's motion for a preliminary injunction. We will reverse and remand.

In 1976 Amoco created Rainbow Oil Company (Rainbow Oil), a new division, to operate its Salt Lake City, Utah, area service stations as self-service outlets. Since that time, Rainbow Oil has operated exclusively

under the "Rainbo" mark. The word "Rainbo" appears in white on signs at these stations against a black background and below a red-orange-yellow-blue truncated rainbow logo. Amoco registered its "Rainbo" service mark and trademark with the United States Patent Office in 1978, and with the State of Utah in 1982. Since the creation of Rainbo Oil, convenience foods such as hot dogs, soda drinks, and candies have been sold at the Rainbo stations. In 1980, ice slush drinks were introduced at two Rainbo stations. Although these slush drinks have, since 1980, been sold at four different Rainbo stations, they have never been sold at more than two stations at any given time. (R.Vol.IV at 16.)

During the summer of 1981, appellee Scott G. Van Leeuwen (Van Leeuwen) sold snow cones, under the name "Sno Shop," from two stands in the Salt Lake City area. Van Leeuwen thereafter decided to expand his snow cone business, and on October 5, 1981, he reserved the name "Rainbow Snow" with the State of Utah as the name for his expanded business. The following summer, 1982, Van Leeuwen reentered the snow cone business under the name of Rainbow Snow, Inc., selling snow cones from fourteen round, 10 foot by 6 foot booths. These booths are blue with a 180-degree, red-orange-yellow-green rainbow appearing on the upper half of the face of the booth; below the rainbow, in white letters, appears the name "Rainbow Snow." Some of these booths, at the time of the hearing on Amoco's motion for a preliminary injunction, were located adjacent to Rainbo stations; others were within a few blocks.

On December 6, 1982, Amoco filed suit against Van Leeuwen and Rainbow Snow, Inc., seeking injunctive and other relief, alleging that use of the "Rainbow Snow" mark constituted trademark infringement in violation of state[1] and federal law,[2] a false designation of origin in violation of Section 43(a) of the Lanham Act,[3] and un-fair competition and illegal trade practices. (R.Vol.I, 1–8.) On July 28, 1983, following a two-day evidentiary hearing, the district court denied Amoco's motion for a preliminary injunction. Amoco appeals that decision pursuant to 28 U.S.C. § 1292(a)(1).

The function of a preliminary injunction is to preserve the status quo pending trial on the merits. *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). It is not a final determination of the merits of the cause itself. *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1185 (10th Cir.1975). Because the grant or denial of a preliminary injunction resides within the sound discretion of the trial court, we will set aside its decision only if that discretion is abused. *Lundgrin, supra,* 619 F.2d at 63. The district court denied Amoco's motion for a preliminary injunction after determining that Amoco had established none of the four prerequisites to the issuance of a preliminary injunction. Memorandum Opinion, No. C 82–1165 J, United States District Court for the District of Utah, Central Division, July 27, 1983 (hereinafter cited as "Memorandum Opinion"). In order for a preliminary injunction to issue, the moving party has the burden of establishing:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin, supra,* 619 F.2d at 63. Our disposition of the issue of likelihood of success on the merits makes it unnecessary—as will become more clear from the discussion that follows—for us to reach the other three prerequisites.

■ Amoco's trademark infringement claim is governed by the provisions of 15

---

**1.** Utah Code Ann. §§ 70–3–1 to 70–3–17 (1953).

**2.** 15 U.S.C. § 1051–1127 (1976).

**3.** 15 U.S.C. § 1125(a) (1976).

U.S.C. § 1114(1), which imposes liability for the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered .mark ... *likely to cause confusion*, or to cause mistake, or to deceive ..." (emphasis added). This "likelihood of confusion" test is also applicable to Amoco's claim of false designation of origin, 15 U.S.C. § 1125, its state claims of infringement, Utah Code Ann. § 70–3–13 (1953),[4] and its common law claims of unfair competition and deceptive trade practices. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.1980). Thus, for Amoco to prevail on the merits, it must demonstrate a "substantial likelihood" that it will prevail on the issue of likelihood of confusion.

■ Amoco maintains that the district court, in considering the issue of likelihood of confusion, misapprehended and misapplied governing legal principles. Specifically, Amoco asserts that the district court failed to consider whether prospective purchasers would believe Rainbo and Rainbow Snow were somehow related to or affiliated with each other. Appellant's Opening Brief, at 24.

The district court, quoting our decision in *Avrick v. Rockmont Envelope Co.*, 155 F.2d 568, 572 (10th Cir.1946), stated the general rule regarding likelihood of confusion as follows: "[i]t is the generally accepted rule that a designation is confusingly similar to a trade-mark if an ordinary prospective purchaser, exercising due care in the circumstances, is likely to regard it as coming from the same *source* as the trade-marked article." (emphasis added). Memorandum Opinion, at 5. *Cf. Beer Nuts, Inc. v. Clover Club Foods Co.*, 711

F.2d 934, 940 (10th Cir.1983) ("Infringement of a trademark occurs when the use of a similar mark is likely to cause confusion in the marketplace concerning the source of the different products"). It then applied the factors in Restatement of Torts § 729 (1938), which have been utilized by this Court in determining likelihood of confusion.[5] *Id. See Beer Nuts, supra*, 711 F.2d at 572. Amoco apparently does not disagree that the Restatement factors are to be utilized in determining likelihood of confusion; it contends, however, that those factors were considered in too narrow a context by the district court.

We agree that the Restatement factors should be considered not only in the context of confusion of source, but also in the context of confusion that results from a mistaken belief in common sponsorship or affiliation. The Second Circuit recognized this distinction in *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Inc.*, 604 F.2d 200, 204–05 (2d Cir.1979):

Defendants assert that the Lanham Act requires confusion as to the origin of the film, and they contend that no reasonable person would believe that the film originated with plaintiff. Appellants read the confusion requirement too narrowly. In order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. [citations omitted.] The public's belief that the ·mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement.

Similarly, the Seventh Circuit has said:

What is infringed is the right of the public to be free of confusion and the

---

4. Although the parties disagreed as to the proper legal definition of "likelihood of confusion" (see discussion *infra*), they and the district court apparently agreed that, regardless which is the proper definition, it is the same under both Utah and federal law. Because none of the parties has raised this as an issue on appeal, we assume, but do not decide, that the tests are the same under Utah and federal law.

5. The Restatement factors are:
"(a) the degree of similarity between the designation and the trade-mark or trade name in

(i) appearance;
(ii) pronunciation of the words used;
(iii) verbal translation of the pictures or designs involved;
(iv) suggestion;
(b) the intent of the actor in adopting the designation;
(c) the relation in use and manner of marketing between the goods or services marketed by the other;
(d) the degree of care likely to be exercised by purchasers."

synonymous right of a trademark owner to control his product's reputation. Thus Distiller's evidence must be evaluated on the basis of whether it disclosed a likelihood that consumers generally familiar with Distiller's mark would be likely, upon seeing only Restaurant's sign, to believe that Restaurant's enterprise was in some way related to, or connected or affiliated with, or sponsored by, Distiller. If so, a right to relief for trademark infringement has been shown.

*John Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 274 (7th Cir. 1976). *See also Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763, 771 (5th Cir. 1980) ("A trademark is infringed if use of the allegedly infringing mark is likely to cause confusion or mistake, or to deceive purchasers or users as to the source, endorsement, affiliation or sponsorship of the product").

Here, the district court limited its inquiry to the issue of confusion of source, and did not consider potential confusion which might result from a belief in common sponsorship or affiliation. Implicit in the court's ruling was the conclusion that confusion was unlikely because prospective purchasers would not believe that Rainbow Snow cones originated with the Rainbo Oil Company. Although it is true that "likelihood of success on the merits" is but one prerequisite to the issuance of a preliminary injunction, it is our view that the district court's determination that confusion was unlikely may have affected its resolution of the other three prerequisites. We would be remiss if we did not observe that the district court did not have the benefit of the guidelines announced herein when it considered the issue of likelihood of confusion. Thus, the case must be remanded so that the district court can reconsider its denial of Amoco's motion for a preliminary injunction in accordance with the legal standards set forth herein.

REVERSED AND REMANDED.