**KING OF THE MOUNTAIN SPORTS, INC., Plaintiff,**

v.

**CHRYSLER CORPORATION, a Michigan Corporation; Eclipse Television and Sports Marketing LLC, a Colorado Limited Liability Company; Eclipse Television and Sports Marketing, Inc., a California Corporation; Bogner of America, Inc., a Delaware Corporation; Henry Schneidman, an individual; and Mark Schelde, an individual, Defendants.**

Civil Action No. 96–B–250.

United States District Court, D. Colorado.

July 1, 1997.

Donald A. Degnan, Scott S. Havlick, Holland & Hart, Boulder, CO, Lile H. Deinard, Alan Mansfield, David M. Elkins, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, New York City, for King of the Mountain Sports, Inc.

Richard P. Holme, Glenn K. Beaton, Barry Bartel, Davis, Graham & Stubbs, Denver, CO, for Chrysler Corporation, Eclipse Television and Sports Marketing LLC, Eclipse Television and Sports Marketing, Inc., Henry Schneidman, and Mark Schelde.

Judith Keene Rosenblum, Rosenblum Law Office, Denver, CO, for Bogner of America, Inc.

## MEMORANDUM OPINION & ORDER

BABCOCK, District Judge.

Plaintiff asserts claims for trademark infringement under federal and common law, trademark dilution, and violation of the Colorado Consumer Protection Act. Defendants move for summary judgment on all of plaintiff's claims or, in the alternative, for summary judgment on plaintiff's claims for monetary damages. The motion is adequately briefed and oral argument would not materially aid me in deciding it. For the following reasons, I will grant defendants' motion for summary judgment on all of plaintiff's claims.

### I.

Plaintiff, King of the Mountain Sports, Inc., is based in Loveland, Colorado, and sells camouflage-patterned natural fiber clothing manufactured by the Pendleton Wool Company. Plaintiff obtained a federal registration for a first stylized trademark on June 4, 1991, and on a second mark on September 28, 1993. The first mark consists of the words "King of the Mountain Sports Inc." in Gothic lettering superimposed on the outline of a mountain and enclosed by a thin, rectangular border. Pltf. Exh. 6. The words "King" and "Sports" appear as the most dominant portions of the mark. The second mark consists of the words "King of the Mountain" in Gothic lettering superimposed over the outline of a mountain. Pltf. Exh. 7. As used, plaintiff's marks generally employ dark lettering and backgrounds of black, brown, and green. See, e.g., Pltf. Exhs. 4, 5. Plaintiff's clothing is marketed primarily through catalog sales and through direct sales at sport shows. Deft. Exh. 11, Cavalier Depo. at 16–17.

Defendant Eclipse Television and Sports Marketing LLC (Eclipse) was formed in 1995 and purchased the right to contract with Chrysler to use the "Jeep KING OF THE MOUNTAIN DOWNHILL SERIES" logo from Eclipse Television and Sports Marketing, Inc. (Eclipse California). Schneidman Aff. at ¶ 3. Eclipse produces sporting events, including the Jeep KING OF THE MOUNTAIN DOWNHILL SERIES (defendants' logo), which consisted of five downhill ski races in the 1995–96 series. Id. at ¶ 4. Defendants Schneidman and Schelde work for Eclipse and were involved in the selection of the defendants' logo. Defendant Chrysler, manufacturer of automobiles, including the "Jeep" line of vehicles, sponsored the series of ski races produced by Eclipse California in the 1993–94 (one race) and 1994–95 (three races) seasons and by Eclipse in the 1995–96 (five races) season.

Defendants' primary logo consists of the word "Jeep" in largest, purple type above the words "KING OF THE MOUNTAIN" in smaller, blue type, and the words "DOWNHILL SERIES" in even smaller, red type at the bottom of the logo. The words are superimposed over a blue outline of a mountain with a picture of a red ski racer in a tucked position and a series of red and orange straight lines stretched out behind him to suggest the speed with which he is racing. Defendants' logo, however, does not always appear in this form. The least colorful version of defendants' logo appearing in the record consists of the words "Jeep King of the Mountain" in white, bold type on a bright blue background. See Pltf. Exh. 25. The

words "Downhill Series" were not added until 1994, and are still not always used. *See* Pltf. Exhs. 15, 25.

Defendants have used the logo to promote the ski races on billboards, ski bibs, magazines, etc. Defendants have also placed the logo on several items of clothing, which have been given away to participants and spectators at the races. *See* Deft. Exh. 20, Interrog. Answ. Nos. 5, 6. Defendant Bogner manufactures the ski jackets on which defendants placed their logo; however, no such jackets have been sold. *Id.* Television commentators have worn the Bogner jackets with defendants' logo on television during coverage of the ski races.

Plaintiff asserts claims for (1) trademark infringement under 15 U.S.C. § 1114(1); (2) trademark infringement (false designation of origin) under 15 U.S.C. § 1125(a); (3) trademark dilution under 15 U.S.C. § 1125(c); (4) common law trademark infringement and unfair competition; and (5) violation of Colorado Consumer Protection Act, Colo.Rev.Stat. § 6–1–105(1)(a), (b), (c), (e), (h). Defendants Eclipse and Chrysler moved for summary judgment on all of plaintiff's claims on October 7, 1996. Eclipse California, Schneidman, and Schelde were then added as defendants by plaintiff's first amended complaint, and those defendants moved for summary judgement on January 24, 1997, incorporating the arguments made in the motion and brief of Eclipse and Chrysler. Defendant Bogner joined the summary judgment motion on June 2, 1997. I will treat all defendants as having moved for summary judgment based upon the October 7, 1996, motion and brief and the April 15, 1997, reply brief.

## II.

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The nonmoving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). The moving party need not negate the nonmovant's claims, but need only point out that "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. An issue of fact is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. at 2512. However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12; *Mares,* 971 F.2d at 494.

## III.

Defendants argue: (1) there is no likelihood of confusion and, therefore, defendants cannot be liable for federal or common law

trademark infringement; (2) plaintiff's mark is not "famous" within the meaning of the anti-dilution statute; and (3) plaintiff cannot show a violation of the Colorado Consumer Protection Act. Therefore, defendants argue that they cannot be liable on any of plaintiff's claims. In the alternative, defendants argue that they cannot be liable for money damages, and plaintiff should be limited to injunctive relief if defendants are found liable. I agree that defendants are not liable on any of plaintiff's claims.

## A. *Trademark Infringement (Likelihood of Confusion)*

■ Plaintiff agrees that to prevail on its claims for federal or common law trademark infringement it must show that defendants' use of the logo in question is likely to cause confusion. The unauthorized use of "any reproduction, counterfeit, copy, or colorable imitation" of a registered trademark in a way that "is likely to cause confusion or to cause mistake, or to deceive" constitutes trademark infringement under the Lanham Act. 15 U.S.C. § 1114(1)(a); *see also Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1484 (10th Cir.1987) (noting that a similar test is used for false designation of origin claims under 15 U.S.C. § 1125(a)). It is not necessary that the alleged infringer directly compete with the trademark holder to constitute infringement. *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 558 (10th Cir.1984); *McCarthy on Trademarks and Unfair Competition*, 4th Ed., Chp. 24 (1997). Rather, plaintiff need only prove that the public is likely to be confused about the source of the parties' products or services *or* about affiliations or sponsorships among the parties and their products or services. *Id.*

■ Confusion can be either direct— where the public is likely to think that the senior user is the source of or is affiliated with the junior user's product, or reverse— where the public is likely to think that the junior user is the source of or is affiliated with the senior user's product. *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1371–72 (10th Cir.1977) (establishing the doctrine of reverse confusion), *cert. dismissed*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978). The plaintiff has the burden to show likelihood of confusion. *Jordache*, 828 F.2d at 1484.

■ Likelihood of either direct or reverse confusion is a question of fact. *Amoco, supra* at 557. However, this does not preclude summary judgment in favor of a defendant accused of infringement. As the Tenth Circuit has stated:

> [C]ourts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source. Though likelihood of confusion is frequently a fairly disputed issue of fact on which reasonable minds may differ, the issue is amenable to summary judgment in appropriate cases.

*Universal Money Centers v. American Telephone & Telegraph*, 22 F.3d 1527, 1530 (10th Cir.) (quoting *Warner Bros. v. American Broadcasting Cos.*, 720 F.2d 231, 246 (2d Cir.1983)), *cert. denied* 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). This is one such appropriate case.

In *Universal Money Centers, supra*, the Tenth Circuit considered the following six factors in determining whether there was a likelihood of confusion: (1) the degree of similarity between the marks in (a) appearance, (b) pronunciation of the words used, (c) verbal translation of the pictures or designs involved, and (d) suggestion; (2) the intent of the defendant in adopting its designation; (3) the relation in use and manner of marketing between the goods and service marketed by the defendant and those marketed by the plaintiff; (4) the degree of care likely to be exercised by purchasers; (5) evidence of actual confusion; and (6) the strength or weakness of the plaintiff's mark. "This list is not exhaustive. All of the factors are interrelated, and no one factor is dispositive." *Id.* (quoting *Jordache*, 828 F.2d at 1484). I will address each of these factors in turn.

### 1. Similarity of the Marks

■ "The degree of similarity between marks is tested on three levels as encountered in the marketplace: sight, sound, and meaning." *Universal Money Centers, supra*

at 1530–31. The proper comparison is not "side by side," but rather "the court must determine whether the alleged infringing mark will be confusing to the public when singly presented." *Id.* at 1531 (quoting *Beer Nuts, Inc. v. Clover Club Foods Co. (Beer Nuts I),* 711 F.2d 934, 940 (10th Cir.1983)). In this context, similarities between the marks should be given more weight than differences. *Id.* (citing *Jordache, supra* at 1485). Here, as in *Universal Money Centers,* the sight, sound, and meaning of the marks are "strikingly dissimilar," and this factor weighs heavily in favor of defendants.

The facts of this case are, in many ways, comparable to *Universal Money Centers.* There, UMC used the word "universal" on its ATM cards and ATMs. AT & T used the word "universal" on its credit cards. The court held that, although similarities between marks are given more weight than differences, outside of the common use of the word "universal," the differences between the marks' appearance, sound, and meaning overwhelmed the similarities. Similarly, here, the only similarity between the plaintiff's and defendants' marks is that they both employ the phrase "King of the Mountain."

Under the sight test, defendants' mark is strikingly dissimilar to plaintiff's, thus preventing confusion even when singly presented. Defendants' mark is colorful and bold. It includes a number of features beyond the "King of the Mountain" phrase. In the primary form of defendants' mark, the dominant portion is the word "Jeep" in large, purple letters. In addition, a ski racer with motion lines trailing behind him is prominently displayed in red. Further, the words of defendants' mark are printed in bold, unadorned type-face, and the mark is generally oriented vertically.

In contrast, plaintiff's marks are understated and fairly uncolorful. "King of the Mountain" is the dominant portion the plaintiff's marks, and it is printed in Gothic type-face. Both marks are horizontal in orientation and contain little more than text and an outline of a mountain. Even in its most basic form, defendants' mark is easily distinguishable from plaintiff's due to its color and type-face and the prominence of the word "Jeep."

Plaintiff's contention that defendants' mark sometimes appears without the word "Jeep" included is not substantiated by the evidence submitted. Further, that defendant Eclipse registered a trademark in Colorado on the phrase "King of the Mountain" without "Jeep" included is inapposite. Although such evidence could be used to rebut an argument that plaintiff's trademarks are not distinctive, it has little to do with whether defendants have actually employed a trademark in such a way that is likely to confuse the public. The evidence presented leaves no question of fact that defendants have used their logo only in a form including the word "Jeep." That inclusion does much to diffuse any confusion that might otherwise arise from defendants' use of their logo.

In addition, the sounds and cadences of the marks are dissimilar. In *Universal Money Centers,* the court stated that "AT & T Universal Card" and "Universal Money" have different sounds and cadences. Similarly, "Jeep King of the Mountain Downhill Series" and "Jeep King of the Mountain" have different sounds and cadences than "King of the Mountain" or "King of the Mountain Sports, Inc." Jeep, again, is the dominant and first sound of defendants' logo.

Finally, the marks of plaintiff and defendants do not convey the same meaning or stimulate the same mental reaction. Plaintiff's marks are simple, reserved, and dignified. Indeed, one of plaintiff's complaints is that it does not want to be associated with the "glitzy" ski races promoted by defendants. Defendants' mark is bright and attention-grabbing, connoting the fun and speed associated with ski racing. "While it is true that the dominant portion of each mark is entitled to greater weight in evaluating the likelihood of confusion, each mark is to be considered as a whole." *Universal Money Centers, supra* at 1531. I am convinced that there is no genuine question that "Jeep" is the dominant portion of defendants' mark; however, even assuming that the phrase "King of the Mountain" is the dominant portion of defendants' mark, the marks as a whole are not confusingly similar. The differences between the marks significantly outweigh any similarities.

#### 2. Intent of the Defendants

■ Plaintiff argues that defendants acted in bad faith by not performing a full trademark search before beginning use of their logo. Plaintiff cites no persuasive authority for their novel interpretation of this element. The Tenth Circuit has stated that "The proper focus [remains] whether defendant[s] had the intent to derive benefit from the reputation or goodwill of plaintiff." *Jordache, supra* at 1485. Plaintiff has presented no evidence to suggest that the defendants were even aware of plaintiff's existence, let alone that they intentionally attempted to trade on plaintiff's reputation or goodwill. Rather, the undisputed evidence suggests that: (1) defendants did not know of plaintiff or its trademarks when they designed their logo; (2) defendants knew that no other competitor in the ski-race industry used the term "King of the Mountain;" and (3) defendants incorporated the phrase "King of the Mountain" to describe the goal of the ski racers competing in the event—to be the "king of the mountain" in downhill ski racing. Schneidman Aff. ¶ 5; Schelde Depo. of 10/28/96 at pp. 33–34, 41, 43; Schelde Depo. of 1/27/97 at pp. 36–38; Deft. Exh. 20 at 3 and 15.

Nor can plaintiff show malevolent intent through defendants' refusal to stop using their logo after receiving notice from plaintiff. Given the arguments that I have determined persuasive here, defendants had a good faith belief that they were not infringing plaintiff's trademarks. *See Knaack Mfg. Co. v. Rally Accessories, Inc.*, 955 F.Supp. 991, 1004 (N.D.Ill.1997) (stating that the "fact that others had backed down in the face of Knaack's litigation did not require Rally to do so" because "Rally had every right to stand up and fight for what it believed was appropriate conduct on its part."); *Munters Corp. v. Matsui America, Inc.*, 730 F.Supp. 790, 799 (N.D.Ill.1989), *aff'd*, 909 F.2d 250 (7th Cir.), *cert. denied*, 498 U.S. 1016, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990). Accordingly, this factor weighs in defendants' favor.

#### 3. Similarity in Products/Services and Manner of Marketing

■ "The greater the similarity between the products and services, the greater the likelihood of confusion." *Universal Money Centers, supra* at 1532. In *Universal Money Centers*, the Tenth Circuit stated that UMC's ATM card's and AT & T's credit cards were similar, rejecting the district court's "overly technical" distinction between the two. Here, the distinction is more than technical.

Plaintiff sells camouflage-patterned hunting apparel. Defendant Chrysler sells automobiles and sponsors a ski racing series. Defendants Eclipse and Eclipse California promote television and sporting events. Only defendant Bogner sells clothes, but it does not sell hunting apparel. Schwamb Aff. ¶¶ 6, 7.

Bogner supplied the ski jackets on which defendants affixed their logo. However, the clothing on which defendants placed their logo was not sold; it was given away as promotional items, and, therefore, does not compete even in a broad sense with plaintiff's clothing. Deft. Exh. 13 at ¶ 6. Further, defendants' logo is clearly used on clothing to promote the ski race series and is not being used in a trademark sense to sell clothes. *See* Deft. Exhs. 13 at ¶ 6, 20 at ¶ 7; *Toro Mfg. Corp. v. John B. Stetson Co.*, 161 U.S.P.Q. 749, 750, 1969 WL 9078 (PO TM TApp Bd 1969). Even Mr. Cavalier, plaintiff's president, admitted that the best way to determine the maker of a jacket is to look on the tag inside of the collar. Deft. Exh. 11, p. 103. There is nothing to suggest that clothing bearing defendants' logo would give any indication of the maker of that clothing—only that the clothing was being used to promote the "Jeep King of the Mountain Downhill Series." Indeed, plaintiff itself puts its mark on promotional items, including "Polo" shirts, although Cavalier admits he has "no idea" who makes the shirts. Deft. Exh. 11, p. 102.

I am also unpersuaded by plaintiff's vague assertions that it is "researching" the possibility of direct marketing of clothing to skiers and snowboarders. Although I agree that likelihood of expansion into a particular market is an important factor in this inquiry, see *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 474 (3d Cir.1994), it is not dispositive here. First, plaintiff's only evidence in this regard is Cavalier's affidavit, which contradicts, in great part, his earlier deposition testimony. Pltf. Exh. 1 at ¶ 12;

Cavalier Depo. pp. 124–138. A plaintiff may not contradict earlier testimony for the purpose of creating a fact issue precluding summary judgment. *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986). Second, even were I to credit Cavalier's affidavit, there is no evidence that any of the defendants has used the logo in question to sell clothing of any kind. *See also S.C. Johnson & Son, Inc. v. Johnson*, 175 F.2d 176 (2d Cir.), *cert. denied*, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949) (suggesting that a very strong likelihood of expansion must be shown before a mark holder can "reach a choking hand into a market not its own.").

In addition, the manner of plaintiff's and defendants' marketing is significantly different. Plaintiff has directly targeted hunters through advertisements in hunting magazines and sports shows. Deft. Exh. 11, pp. 16–17, 34–35, 42–43, 58. Defendants, alternatively, have targeted fans of ski racing through advertisements in mainstream national magazines and television commercials. Deft. Exh. 13, ¶ 4; Exh. 22.

Importantly, contrary to the suggestion of defendants, plaintiff need not prove direct competition leading to confusion as to source. I recognize that to prevail plaintiff need only show a likelihood of confusion as to affiliation or sponsorship. *See Amoco, supra.* Moreover, viewing the evidence in a light most favorable to plaintiff, I am convinced that plaintiff's and defendants' products and services are "related" enough to support a claim if likelihood of confusion can otherwise be shown. *See McCarthy, supra* at 24:5–12 (explaining that noncompeting goods must be at least "related" to support a claim for trademark infringement).

Nevertheless, it is apparent that the public is less likely to be confused in any manner by the use of similar marks on noncompeting or only tenuously related goods than on competing goods. Therefore, the relatedness of plaintiff's and defendants' goods and services and the manner of their marketing are highly relevant even to a claim based upon a likelihood of confusion as to sponsorship or affiliation. Accordingly, I am convinced that this factor too weighs in defendants' favor.

### 4. Degree of Care by Consumers

■ Because plaintiff has alleged both direct and reverse confusion, I must examine the degree of care likely to be exercised by consumers in purchasing both plaintiff's and defendants' products and services. Plaintiff argues that this factor favors neither side. Although plaintiff admits that its customers are sophisticated because it sells high quality goods at fairly high prices, it argues that this factor does not address the question whether consumers are likely to be confused into thinking plaintiff sponsors or is connected with defendants' ski races—an affiliation plaintiff apparently wishes to avoid.

I agree that this factor does not advance this case significantly. Defendants do not have a traditional "product" or service that they are using their logo directly to sell. Indirectly, of course, each defendant is trying to use the logo and related ski race series to sell its product or service; however, there is no evidence that a consumer is likely to think that plaintiff is the source of those products or services. For example, no consumer would buy a Jeep vehicle thinking that plaintiff is the source of it. Nor is a consumer likely to be confused about the source of plaintiff's products. Rather, plaintiff's main concern appears to be that it will be affiliated with an event that it considers to be contrary to the image it wishes to project. To the extent plaintiff bases its claim on confusion due to affiliation or sponsorship, the level of consumer sophistication is inapposite. *See generally supra*, at Chp. 24 (discussing trademark infringement involving noncompeting products). To the extent plaintiff's claim is based upon traditional confusion as to source, this factor favors defendants.

### 5. Actual Confusion

■ Evidence of actual confusion is not required for a plaintiff to prevail in a trademark infringement action; however, it is strong evidence of a likelihood of confusion when competent evidence of actual confusion is presented. *Jordache, supra* at 1487. There is no competent of evidence of actual confusion in this case. Plaintiff has presented no survey evidence, and what anecdotal evidence it has proffered is unavailing.

The Tenth Circuit has warned that "de minimus evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding likelihood of confusion." *Universal Money Centers*, 22 F.3d at 1534–35. In *Universal Money Centers*, the court stated that plaintiff's evidence that 14 of 64 customers contacted in a phone survey were confused was de minimus. *Id.* Here, plaintiff's evidence is not even that strong. Plaintiff presents evidence of only three isolated and anecdotal instances of actual confusion. Deft. Exh. 11, pp. 113, 122, 141, 146–48; Exh. 44; Exh. 12 at No. 15. Such evidence falls clearly short of that necessary to support a finding of actual confusion, and I will not consider it here.

6. Strength of Plaintiff's Mark

■■■■ Likelihood of confusion increases when the senior user's mark is strong. *Universal Money Centers, supra* at 1533. The strength of a mark is related to its distinctiveness. Where a mark is highly distinctive and not used by others, a mark is strong. *See id.*; *SquirtCo. v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980). However, "[w]here a trademark is itself weak, minor additions may effectively negate any confusing similarity." *Sun Banks of Fla. v. Sun Fed. Sav. & Loan Assn.*, 651 F.2d 311, 316 (5th Cir.1981).

■■■■ The parties disagree as to the correct measure of distinctiveness and strength of the mark. Defendants do not dispute that plaintiff's mark is at least moderately strong in the hunting apparel market but submit that it is descriptive and weak in other markets. Defendants submit evidence that the phrase "King of the Mountain" has been used for decades to describe, inter alia, a children's game, a Vail, Colorado volleyball tournament, the winner of mountain stages in bicycle races, etc. Deft. Exhs. 23–25, 33, 35, 38, 40–41. Plaintiff argues that its mark is strong because it is arbitrary when applied to outdoor clothing. For example, when a consumer thinks of a wool jacket, it is not likely that he will automatically think of the phrase "King of the Mountain."

I agree that "King of the Mountain" is inherently distinctive when used as a trademark on outdoor clothing. It does not follow, however, that plaintiff's mark is distinctive and strong for all purposes. Indeed, any arbitrary mark is "distinctive," but that alone does not make the mark "strong." Otherwise, an arbitrary or fanciful trademark would be considered "strong" even before it has been used extensively and generated public recognition. Plaintiff here has provided no evidence of the public's recognition of its trademark, arguing only that its mark is "distinctive."

Further, plaintiff cites *Fisons Horticulture, Inc., supra* at 478, where the court stated that "[t]he significant factor is not whether the word itself is common, but whether the way the word is used in a particular context is unique enough to warrant trademark protection." The court noted further that "shell" and "apple" are not uncommon words but are arbitrary when applied to gasoline and computers. I agree; however, the inquiry cannot end there.

Assume that Apple Computer Co. sued an apple juice manufacturer that used "apple" in its trademark. That "apple" is clearly a strong, distinctive mark in the computer industry is not probative of whether consumers are likely to be confused by juice manufacturer using "apple" in its trademark. Similarly, here I need to consider whether plaintiff's mark is strong and distinctive as applied to the products and services defendants provide in conjunction with their challenged mark.

Here again, there is no evidence that any of the defendants are using their logo to sell clothes and compete with plaintiff. Rather, the logo is used in conjunction with promotion of the ski race series sponsored and run by defendants. To that extent, the use of the phrase "King of the Mountain" is considerably less distinctive and weaker than when plaintiff uses its mark in connection with outdoor clothing sales.

Although I cannot say that "King of the Mountain" could not be distinctive when used as a trademark in connection with a ski race series, it could at least arguably be classified as a "descriptive" mark that would require proof of secondary meaning before federal registration. Given that "king of the moun-

tain" is used often to describe an individual who prevails in some competition associated with mountains, the phrase is simply not as distinctive in the context defendants employ it as the manner in which plaintiff uses it. Therefore, the public is not as likely to be confused as to source or affiliation because plaintiff's mark is not very distinctive in this setting, and consumers are less likely to associate plaintiff with the events sponsored and run by defendants. Accordingly, even assuming that plaintiff's mark is strong in the hunting apparel market, I conclude that this factor is neutral.

### 7. Balancing of Factors

■ I conclude that, even viewing the evidence in a light most favorable to plaintiff, no reasonable juror could find that the public is likely to be confused by defendants' use of their logo. Here, as in *Universal Money Centers, supra,* the marks are strikingly dissimilar in sight, sound, and meaning. Further, there is no evidence that defendants intentionally attempted to profit from plaintiff's reputation and goodwill; the products and services of plaintiff and defendants and the manners in which they are marketed are not similar; and there is no evidence of actual confusion. Thus, I conclude that no genuine issues of material fact exist, and there is no likelihood of confusion. Accordingly, I will grant defendants' motion for summary judgment on plaintiff's federal and common law trademark claims.

### B. *Trademark Dilution*

■ Plaintiff also asserts a claim under the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c). As distinguished from trademark infringement, dilution is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and the other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. Absent willful conduct on the part of defendants, the remedy for a dilution claim is limited to an injunction. To establish a claim for trademark dilution, plaintiff must show that (1) it owns a "famous" mark and (2) defendants' use has or

will cause dilution. See 15 U.S.C. § 1125(c); *Clinique Labs., Inc. v. Dep Corp.,* 945 F.Supp. 547, 561 (S.D.N.Y.1996).

■ The Act does not define the term "famous;" however, § 1125(c) does provide a list of factors to consider in determining whether a mark is famous:

(A) the degree of inherent or acquired distinctiveness of the mark;

(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

(C) the duration and extent of advertising and publicity of the mark;

(D) the geographical extent of the trading area in which the mark is used;

(E) the channels of trade for the goods or services with which the mark is used;

(F) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought;

(G) the nature and extent of use of the same or similar marks by third parties; and

(H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

Further, plaintiff may only maintain a dilution claim if its mark was famous before defendants began their use of their logo. 15 U.S.C. § 1125(c)(1). Therefore, I will evaluate whether plaintiff's mark was famous before defendants began using their logo in 1993. Weighing the enumerated factors, I conclude that it was not.

Plaintiff began using "King of the Mountain Sports, Inc." as its primary designation in 1983. Deft. Exh. 12, p. 2. Plaintiff registered its first mark in 1991 and its second mark in 1993. Plaintiff has presented no evidence of its quantity of sales, advertising and marketing. Nor has plaintiff made any effort to demonstrate the level of public recognition of its marks. Rather, plaintiff cites only to hearsay and conclusory affidavits to support its contention of fame in its marks. See Pltf. Exhs. 2, 10, 29 (setting forth anecdotal, unsworn, and/or conclusory state-

ments). Although, under the factors set forth in the statute, plaintiff's federal registration provides some evidence of the marks' fame, this alone is not enough.

▆ Section 1125(c) does not use "famous" and "distinctive" interchangeably. Rather, to be famous, a mark must clearly be more than just distinctive in a trademark sense. *See McCarthy, supra* at 24:91 ("[A]ll 'trademarks' are 'distinctive'—very few are 'famous'"). The word "famous" itself connotes that much. Plaintiff has presented no evidence from which a reasonable trier of fact could find that its marks are famous. At best, the evidence suggests that plaintiff's marks have developed a certain distinctiveness in the narrow market of hunting apparel. That is insufficient to show that the marks are famous for the purposes of § 1125(c).

In *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* the Second Circuit stated: "[T]he fact that a mark has selling power in a limited geographical or commercial area does not endow it with a secondary meaning for the public generally." 875 F.2d 1026, 1030–31 (2d Cir.1989) (interpreting a similar New York State statute prohibiting trademark dilution). Accordingly, the court stated that "[b]ecause only one percent of the general population associates LEXIS with the attributes of Mead's service, it cannot be said that LEXIS identifies that service to the general public and distinguishes it from others." *Id.* Similarly, here there is no evidence that persons outside of plaintiff's niche market would associate the phrase "King of the Mountain" with plaintiff. Indeed, defendants have presented copious and unrebutted evidence that "King of the Mountain" is used in connection with a wide variety of events, including sports competitions such as those sponsored and organized by defendants, that have nothing to do with plaintiff. *See* Deft. Exhs. 23–25, 33, 35, 38, 40–41.

Therefore, plaintiff has failed to meet its burden to raise a genuine issue of fact whether their marks are famous within the meaning of § 1125(c). Accordingly, I will grant defendants' motion for summary judgment on plaintiff's claim for trademark dilution.

### C. *Colorado Consumer Protection Act*

Plaintiff asserts a claim under the Colorado Consumer Protection Act (CCPA), Colo. Rev.Stat. § 6–1–105(1)(a), (b), (c), (e), and (h). To prevail on this claim, plaintiff must show that defendants: (a) knowingly passed off goods as those of plaintiff; (b) knowingly made a false designation of product origin; (c) knowingly made a false representation as to connection with another; (e) knowingly made a false representation as to the characteristics or the source of goods; or (h) disparaged the goods of plaintiff by false or misleading representations.

Defendants submit that, based on the arguments made for summary judgment on plaintiff's other claims, plaintiff has no evidence to support its claim under the CCPA. Plaintiff does not respond to defendants' argument, and I agree with defendants. There is simply no evidence that knowingly passed off or falsely designated goods, knowingly made any false representations, or disparaged plaintiff's goods in any way. Accordingly, I will grant defendants' motion for summary judgment on this claim.

Accordingly, it is ORDERED that:

1. Defendants' motion for summary judgment is GRANTED and all of plaintiff's claims are DISMISSED with prejudice;

2. Defendants are awarded their costs.