**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 8 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KING OF THE MOUNTAIN
SPORTS, INC., a Wyoming
corporation,

        Plaintiff - Appellant,

    v.

CHRYSLER CORPORATION, a
Michigan corporation; ECLIPSE
TELEVISION AND SPORTS
MARKETING, LLC, a Colorado
limited liability company;  ECLIPSE
TELEVISION AND SPORTS
MARKETING, INC., a California
corporation; HENRY SCHNEIDMAN,
an individual, and MARK SCHELDE,
an individual,

        Defendants - Appellees,

   and

BOGNER OF AMERICA, INC., a
Delaware corporation,

        Defendant.

No. 97-1290

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 96-B-250)**

---

Scott S. Havlick (Donald A. Degnan and Rita S. Heimes, with him on the briefs), Holland & Hart, LLP, Boulder, Colorado, appearing for Plaintiff-Appellant.

Richard P. Holme (Glenn K. Beaton and Bruce L. Plotkin, with him on the brief), Davis, Graham & Stubbs, LLP, Denver, Colorado, appearing for Defendants-Appellees.

---

Before **TACHA** , **HENRY** , and **LUCERO** , Circuit Judges.

---

**TACHA** , Circuit Judge.

---

Plaintiff King of the Mountain Sports, Inc. ("KOM") filed suit against defendants alleging that they infringed its trademark and violated the Federal Anti-Dilution Act and Colorado Consumer Protection Act. The district court granted defendants' motion for summary judgment on all claims. KOM appealed only the disposition of its trademark infringement claims. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

Plaintiff sells camouflage-patterned, natural fiber, outdoor clothing and related mountaineering accessories. It obtained a federal registration for its first stylized trademark on June 4, 1991, and for a second stylized mark on September 28, 1993. "[Plaintiff's] first mark consisted of the words 'King of the Mountain Sports Inc.' in Gothic lettering superimposed on the outline of a mountain and enclosed by a thin, rectangular border." King of the Mountain Sports, Inc. v.

2

Chrysler Corp. , 968 F. Supp. 568, 570 (D. Colo. 1997).



Plaintiff's first mark.

The second mark consists of the words "King of the Mountain" in Gothic lettering with an outline of a mountain in the background. As used, plaintiff's marks employ dark lettering against drab background colors such as the blacks, browns, and greens found in camouflage. The Gothic lettering is horizontally oriented in one line and only the "K" of King and "M" of Mountain are capitalized.



Plaintiff's second mark.

Plaintiff primarily markets its products to hunters, fishers, campers, and hikers but notes that its customers use its products for all cold weather outdoor activities. It also contends that the downhill skiing and snowboarding apparel markets are a logical expansion area for its product line.

In 1995, defendant Eclipse Television and Sports Marketing LLC ("Eclipse") purchased from defendant Eclipse Television and Sports Marketing,

Inc. ("Eclipse California") the right to contract with defendant Chrysler to use the "Jeep KING OF THE MOUNTAIN DOWNHILL SERIES" logo. "Defendants' primary logo consists of the word 'Jeep' in largest, purple type above the words 'KING OF THE MOUNTAIN' in smaller, blue type, and the words 'DOWNHILL SERIES' in even smaller, red type at the bottom of the logo." <u>King of the Mountain Sports</u>, 968 F. Supp. at 570. Other than the word "Jeep," all words consist entirely of capital letters and "are superimposed over a blue outline of a mountain with a picture of a red ski racer in a tucked position and a series of red and orange straight lines stretched out behind him to suggest the speed with which he is racing." <u>Id.</u>



Defendants' primary logo.

Defendants' logo, however, does not always conform to this description. For example, on banners and scoreboards, defendants have employed a bright blue background with the word "Jeep" on either side of "KING OF THE MOUNTAIN"

4

in stark white, bold, capital letters. Also, television listings have simply referred to the event as "Skiing: King of the Mountain Downhill Series."

Defendants use the logo to identify and promote a series of televised downhill ski races. To this end, they have placed the logo, for example, on billboards, banners, clothing apparel, and in magazines. Defendants have given away several items of clothing featuring the logo to participants, television commentators, and spectators at the skiing events. Defendant Bogner manufactures the ski jackets upon which defendants' logo appears.

Plaintiff objects to defendants' use of the phrase "king of the mountain" in the name of its ski event. It argues that defendants' use of the phrase creates a likelihood of sponsorship confusion. Plaintiff fears that its consumers will believe that KOM sponsors, or is otherwise associated with, the downhill skiing event.

Defendants filed a summary judgment motion in district court arguing, as to the trademark infringement claims, that no likelihood of confusions exists. After thoroughly analyzing the appropriate factors, the district court agreed with defendants and entered summary judgment against KOM.

## II. Discussion

We review the grant of summary judgment de novo, using the same standard applied by the district court. See, e.g. , First Sav. Bank, F.S.B. v. First

5

Bank Sys., Inc. , 101 F.3d 645, 650 (10th Cir. 1996); Universal Money Ctrs., Inc. v. American Tel. & Tel. Co. , 22 F.3d 1527, 1529 (10th Cir. 1994). [1] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "'When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" Universal Money Ctrs. , 22 F.3d at 1529 (quoting Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc. , 912 F.2d 1238, 1241 (10th Cir. 1990)).

Likelihood of confusion forms the gravamen for a trademark infringement action. See 15 U.S.C. §§ 1114(1), 1125(a). Section 43(a) of the Lanham Act declares that any person who

> uses in commerce any word, term, name, symbol, or device, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such

---

[1]To the extent that a more recent panel decision conflicts with the standard of review enunciated in prior Tenth Circuit authority, we are bound by the earlier cases. See Clymore v. United States , 164 F.3d 569, 573 n.5 (10th Cir. 1999) (asserting that the earlier opinion "'constitutes binding circuit precedent constraining subsequent panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court. . . . [Thus,] when faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom.'" (quoting Haynes v. Williams , 88 F.3d 898, 900 n.4 (10th Cir. 1996) (internal citations omitted))).

6

person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Id. § 1125(a). Although "likelihood of confusion is frequently a fairly disputed issue of fact on which reasonable minds may differ, the issue is amenable to summary judgment in appropriate cases." Universal Money Ctrs., 22 F.3d at 1530 n.2 (internal quotation marks and citation omitted); accord First Sav. Bank, 101 F.3d at 650. "[C]ourts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion." Universal Money Ctrs., 22 F.3d at 1530 n.2 (internal quotation marks and citation omitted); accord First Sav. Bank, 101 F.3d at 650.

Thus, in order to prevail on appeal, plaintiff must show that a genuine issue of material fact exists regarding whether defendants' use of its logo would likely cause confusion about the sponsorship of the downhill ski race. The Tenth Circuit has identified six factors, derived from the Restatement of Torts § 729 (1938), that aid in determining whether a likelihood of confusion exists between two marks:

(a) the degree of similarity between the marks;
(b) the intent of the alleged infringer in adopting its mark;
(c) evidence of actual confusion;
(d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties;

7

(e) the degree of care likely to be exercised by purchasers; and
(f) the strength or weakness of the marks.

First Savings Bank, 101 F.3d at 652; see also Universal Money Ctrs., 22 F.3d at 1530; Restatement (Third) of Unfair Competition §§ 20-23 (1995). "This list is not exhaustive. All of the factors are interrelated, and no one factor is dispositive." Universal Money Ctrs., 22 F.3d at 1530. While we consider these factors to determine whether a likelihood of confusion exists regardless of whether the trademark infringement suit involves source or sponsorship confusion, see GTE Corp. v. Williams, 904 F.2d 536, 539-40 (10th Cir. 1990); Amoco Oil Co. v. Rainbow Snow, 748 F.2d 556, 558 (10th Cir. 1984), the weight afforded to some of the factors differs when applied in these separate contexts. In both confusion of source and confusion of sponsorship cases, the similarity of the marks factor constitutes the heart of our analysis. See Heartsprings v. Heartspring, 143 F.3d 550, 554 (10th Cir. 1998) (recognizing that the key inquiry in a source confusion case is "whether the consumer is likely to be deceived or confused by the similarity of the marks.'" (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780 (1992))); Wendt v. Host Int'l, Inc., 125 F.3d 806, 812 (9th Cir. 1998) (emphasizing the primacy of the similarity of mark factor in a confusion of endorsement analysis). However, in the rare, pure sponsorship action, other factors -- such as the relation in use and the manner of marketing between the goods or services and the degree of care likely to be exercised by purchasers --

8

have little importance.  Bearing this in mind, if, as in any case, the examination of the various factors establishes a genuine issue of material fact regarding the likelihood of sponsorship confusion, summary judgment is not appropriate.

**A.  Similarity Between the Marks**

We test the degree of similarity between marks on three levels: sight, sound, and meaning.    See, e.g. , First Sav. Bank  , 101 F.3d at 653;   Universal Money Ctrs. , 22 F.3d at 1530-31;    Beer Nuts, Inc. v. Clover Club Foods Co.     , 805 F.2d 920, 925 (10th Cir. 1986).  We do not consider these factors in isolation. Instead, we must examine them "in the context of the marks as a whole as they are encountered by consumers in the marketplace."        Beer Nuts , 805 F.2d at 925; accord  Heartsprings , 143 F.3d at 554;    Universal Money Ctrs.   , 22 F.3d at 1531; 3 J. Thomas McCarthy,    McCarthy on Trademarks and Unfair Competition      § 23:47 (4th ed. 1996) ("Conflicting marks consisting of both words and pictorial symbols must be compared in their    *entireties*  to determine likelihood of confusion." (emphasis in original)).  Furthermore, we do not engage in a "'side-by-side' comparison."    Universal Money Ctrs.   , 22 F.3d at 1531.  Rather, "the court must determine whether the alleged infringing mark will be confusing to the public when singly presented."     Id. (internal quotation marks and citation omitted).  We give the similarities of the marks more weight than the differences.      See id.

In this case, plaintiff argues that because defendants employ the phrase

"King of the Mountain," the similarity factor weighs in favor of it and creates a genuine issue of material fact regarding likelihood of confusion. We disagree. Comparing the stylized trademark of plaintiff with the ways in which defendants have used the phrase "king of the mountain," we hold that no reasonable jury could find similarity. Even assuming that the phrase "king of the mountain" constitutes the dominant portion of defendants' logo, as plaintiff argues, the marks as a whole [2] are not confusingly similar. Although defendants' logo employs, in part, the same phrase as plaintiff's mark and therefore might sound somewhat similar, the sight and sense of meaning invoked by defendants' logo and plaintiff's stylized mark differ drastically. First, plaintiff's stylized mark is

---

[2]KOM argues in its reply brief that it has a common law trademark not only in its stylized logo but also in the words "King of the Mountain." It did not raise this argument in its opening brief. It made only a passing reference that its complaint includes a claim for common law trademark infringement. Therefore, it waived the argument that it has a common law trademark in the words "King of the Mountain" that defendants infringed. See, e.g., State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (asserting that failure to raise an issue in the opening brief waives the issue); Codner v. United States, 17 F.3d 1331, 1332 n.2 (10th Cir. 1994) (holding we will not consider issue raised for first time in reply brief); Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1558 n.1 (10th Cir. 1992) (declaring that an issue mentioned in brief on appeal, but not addressed, is waived). Moreover, in its complaint plaintiff only claimed a violation of its common law trademark rights to its stylized logo, distinguishing "King of the Mountain" as its trade name and "King of the Mountain" with design composite as its trademark. Therefore, the district court did not address the contention KOM now asserts. This provides additional support for finding that plaintiff has waived this argument. See, e.g., Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("[A] federal appellate court [will] not consider an issue not passed upon below.").

in Gothic lettering, with only the first letter of "King" and "Mountain" capitalized, against a solitary mountain ridge outline. It appears in camouflage colors, consistent with plaintiff's marketing toward hunters. In short, the mark is quite understated. The opposite is true regarding the ways in which defendants have used the phrase "king of the mountain." Defendant's primary logo is quite colorful, done in brilliant blue, purple, red, and orange. The letters consist of bold capitals, and the words are vertically oriented. The mountain outline in the background has a different shape than that in plaintiff's mark, and the logo depicts a skier with red and orange lines shooting out from behind him to suggest the great speed at which he flies down the mountainside. Thus, the visual impact of the plaintiff's mark and defendants' logo differs dramatically. Moreover, as the district court noted,

> the marks of plaintiff and defendants do not convey the same meaning or stimulate the same mental reaction. Plaintiff's marks are simple, reserved, and dignified. Indeed, one of plaintiff's complaints is that it does not want to be associated with the 'glitzy' ski races promoted by defendants. Defendants' mark is bright and attention-grabbing, connoting the fun and speed associated with ski racing.

King of the Mountain Sports, Inc. v. Chrysler Corp., 968 F. Supp. 568, 573 (D. Colo. 1997). Thus, the first and most important factor, similarity of the marks, weighs heavily in defendants' favor. [3]

---

[3]We have also reviewed the record and considered the ways, outside their primary logo, that defendants have used the phrase "king of the mountain" in

## B. Intent of the Defendants

The proper focus under this factor "is whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff." Jordache Enters., Inc. v. Hogg Wyld, Ltd., 828 F.2d 1482, 1485 (10th Cir. 1987) (internal quotation marks and citation omitted); accord Universal Money Ctrs., 22 F.3d at 1532. Plaintiff argues that although it has no direct evidence of bad intent, a jury could infer defendants' intent to derive the benefit and goodwill of KOM's mark because they failed to conduct a full trademark search before using the phrase "king of the mountain." We disagree. As the district court noted, "Plaintiff has presented no evidence to suggest that the defendants were even aware of plaintiff's existence, let alone that they intentionally attempted to trade on plaintiff's reputation or goodwill." King of the Mountain Sports, 968 F. Supp. at 574. Instead, uncontested evidence indicates:

> (1) defendants did not know of plaintiff or its trademarks when they designed their logo; (2) defendants knew that no other competitor in the ski-race industry used the term "King of the Mountain;" and (3)

---

connection with promoting their ski event. For example, the phrase "king of the mountain" in connection with the words "Jeep" and/or "downhill series" appears on banners, ski jackets, contestants' bibs, and advertisements. All involve bold capital letters appearing in white against a brightly colored background or in bright colors against a white background. Comparing plaintiff's stylized mark with these uses, we hold that no similarity between them exists. We likewise reject plaintiff's contention that the television listings of and the other printed references to defendants' event in the record are confusingly similar to KOM's mark.

12

> defendants incorporated the phrase "King of the Mountain" to describe the goal of the ski racers competing in the event – to be the "king of the mountain" in downhill ski racing.

Id. Because the undisputed "evidence indicates [that the] defendant[s] did not intend to derive benefits from . . . plaintiff's existing mark, this factor weighs against the likelihood of confusion." Heartsprings, 143 F.3d at 556; accord First Sav. Bank, 101 F.3d at 655.

## C. Similarity in Products/Services and Manner of Marketing

Typically, "[t]he greater the similarity between the products and services, the greater the likelihood of confusion." Universal Money Ctrs., 22 F.3d at 1532 (internal quotation marks and citations omitted). This is undoubtedly true when the action pertains to source or affiliation confusion. For example, Beer Nuts, Inc. v. Clover Club Foods Co., 805 F.2d 920, 926 (10th Cir. 1986) involved two competing companies marketing very similar goods – sweetened salted peanuts – in the same manner. In that case, we found that this factor added strength to the position that a reasonable consumer would likely be confused as to the source of the peanuts. See id. However, in a case involving pure sponsorship confusion, the parties may have little similarity in their products or manner of marketing. Here, KOM's clothing is only marginally related to defendant's ski event. This disconnection greatly reduces the relevance of the similarity of products factor. We therefore find it provides no support of plaintiff's claim.

13

**D. Degree of Care Exercised by Purchasers**

"A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusing similar trade names." Heartsprings, 143 F.3d at 557. Plaintiff argues, however, that this factor rarely reduces the risk of sponsorship confusion. We agree. The harm plaintiff seeks to remedy in this case is loss of reputation and goodwill stemming from its perceived sponsorship of the ski event. The care with which consumers select a product does not impact the association they may make regarding the sponsorship of an event. Therefore, even if plaintiff's current and potential customers exercise a high degree of care, it would have little impact on our determination regarding likelihood of confusion in this case.

**E. Actual Confusion**

Although plaintiff need not set forth evidence of actual confusion to prevail in a trademark infringement action, see Beer Nuts, Inc. v. Clover Club Foods Co., 805 F.2d 920, 928 (10th Cir. 1986), "[a]ctual confusion in the marketplace is often considered the best evidence of likelihood of confusion." Universal Money Ctrs., 22 F.3d at 1534; accord Jordache, 828 F.2d at 1487. However, "isolated instances of actual confusion [may] be de minimis." Universal Money Ctrs., 22 F.3d at 1535; see also McCarthy, supra, § 23:14 ("Evidence of actual confusion of a very limited scope may be dismissed as de minimis: Probable confusion cannot

14

be shown by pointing out that at someplace, at some time, someone made a false identification." (internal quotation marks omitted)    ).  "De minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion."    Universal Money Ctrs.  , 22 F.3d at 1535.  After carefully reviewing the record, we have found that plaintiff has put into evidence, at most, only seven examples of actual confusion.  This handful of anecdotal evidence is de minimis and does not support a finding of a genuine issue of material fact as to the likelihood of confusion, especially in light of the complete lack of similarity between the defendants' uses and plaintiff's mark.  See id. at 1535-36 ("The de minimis evidence of actual confusion is especially undermined in this case by the sheer lack of similarity between the marks.").

**F.  Strength of Plaintiff's Mark**

The stronger a trademark, the more likely that encroachment upon it will lead to sponsorship confusion.    See First Sav. Bank  , 101 F.3d at 653.  "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties."         Id. (internal quotation marks and citation omitted).  To assess the relative strength of a mark, one must consider the two aspects of strength: (1) "Conceptual Strength: the placement of the mark on the [distinctiveness or fanciful-suggestive-descriptive] spectrum;" and (2) "Commercial Strength: the marketplace

15

recognition value of the mark." McCarthy , supra , § 11:83.

Under the conceptual strength prong, the categories, in descending order of strength, are: fanciful; arbitrary; suggestive; descriptive; and generic. See id. § 11:1; see also Heartsprings , 143 F.3d at 555. "'Fanciful' marks consist of 'coined' words that have been invented or selected for the sole purpose of functioning as a trademark." McCarthy , supra , § 11:5. "Arbitrary marks comprise those words, symbols, pictures, etc., that are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services." Id. § 11:11. Suggestive marks are those that suggest some quality or ingredient of the goods. See id. § 11.62. Often the line between arbitrary and suggestive is difficult to distinguish, see id. § 11:12, but for our purposes, no reason exists to make the distinction. Viewed in the light most favorable to plaintiff, its stylized mark is at least suggestive on the conceptual strength spectrum. Moreover, again drawing all inferences in favor of plaintiff, we assume that the mark has great commercial strength in the hunting apparel market. Therefore, plaintiff's mark is quite strong.

The strength of plaintiff's mark cannot outweigh the other factors, however. Given the great dissimilarity between its mark as a whole and the ways in which defendants have used the phrase, "king of the mountain," as well as our

16

above analysis of the other factors, we find that no reasonable juror could find likelihood of confusion between plaintiff's and defendants' marks. Accordingly, we hold that there exists no genuine issue of material fact as to the likelihood of confusion.

### III.  Conclusion

In sum, after reviewing the evidence in the light most favorable to plaintiff, we conclude as a matter of law that no likelihood of confusion exists. We AFFIRM the district court's grant of summary judgment as to the trademark infringement issue raised on appeal.