**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 3 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

SALLY BEAUTY COMPANY, INC.,
a Delaware corporation; MARIANNA
IMPORTS, INC., a Nebraska
corporation,

> Plaintiffs-Appellants/
> Cross-Appellees,

v.

BEAUTYCO, INC., a Delaware
corporation,

> Defendant-Appellee/
> Cross-Appellant.

Nos. 01-6049 and 01-6075

---

## APPEALS FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA
### (D.C. NO. 99-CV-1372-C)

---

Craig S. Fochler, Wildman, Harrold, Allen & Dixon, Chicago, Illinois (Charles R.
Mandly, Jr. and Nathan E. Ferguson, Wildman, Harrold, Allen & Dixon, Chicago,
Illinois; and Jill Robb Ackerman and Michael Sullivan, Baird, Holm, McEachen,
Pedersen, Hamann & Strasheim, Omaha, Nebraska, with him on the briefs), for
Plaintiffs-Appellants/Cross-Appellees.

Joseph P. Titterington (G. Neal Rogers with him on the briefs), Dunlap, Codding
& Rogers, P.C., Oklahoma City, Oklahoma, for Defendant-Appellee/Cross-
Appellant.

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Sally Beauty Co., Inc. ("Sally Beauty") and Marianna Imports, Inc. ("Marianna"), collectively "Plaintiffs," sued Beautyco, Inc. ("Beautyco") for trademark infringement, trade dress infringement, and false advertising. Beautyco markets a line of hair care products under the trade name GENERIX, which the Plaintiffs claim infringes the trademark and trade dress of their competing line of hair care products called Generic Value Products. The district court granted summary judgment to Beautyco on the Plaintiffs' claims. The court also granted summary judgment to the Plaintiffs on Beautyco's counterclaims for violations of Oklahoma antitrust and unfair competition laws. Exercising jurisdiction under 28 U.S.C. § 1291, this court **affirms in part**, **reverses in part**, and **remands**.

## II. BACKGROUND

Plaintiff Sally Beauty owns and operates stores under the name Sally Beauty Supply and sells hair care, skin care, and nail care products. Plaintiff

Marianna is a "filler" or contract manufacturer and packager of beauty supply products. Defendant Beautyco operates a chain of beauty supply stores that competes with Sally Beauty Supply and sells beauty supplies to the general public and the salon trade.

Sometime in 1989 or 1990, Sally Beauty began selling a line of hair care products called Generic Value Products, which Sally Beauty conceived as a lower-priced alternative to brand name salon products. Generic Value Products contain ingredients, colors, and fragrances similar to their salon counterparts. Marianna helped design the packaging for Generic Value Products and manufactures the line for Sally Beauty. The parties do not dispute that the trade dress at issue includes Sally Beauty's white bullet-shaped bottle with a flat, black cap. In addition, the Generic Value Products mark appears in white lettering against a black rectangular field near the top of the bottle. In the middle of the bottle, the product compares itself to a brand name salon product. On the back, there is a side-by-side listing of the ingredients in the Generic Value Products item and the name brand salon product.

The Plaintiffs agreed with each other that Sally Beauty would own the trade dress for the Generic Value Products line and Marianna would own the trademark. Marianna applied for and received federal trademark protection for the Generic

Value Products mark in 1998. Sally Beauty holds an exclusive license from Marianna to use the trademark.

The mark consists of the words "Generic Value Products" when associated with hair care products. Marianna's mark is typed in capital letters in the principal trademark register, which means that the registration covers all design features and is not limited to any special form or lettering. *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:58 (4th ed. & June 2002 database update) [hereinafter *McCarthy on Trademarks*] ("'Registrations with typed drawings are not limited to any particular rendition of the mark and, in particular, are not limited to the mark as it is used in commerce.'" (quoting *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 950 (Fed. Cir. 2000))). The registration explicitly disavows the right to use the words "generic" and "products" separate from the mark. Since its introduction, Sally Beauty has sold millions of dollars of the Generic Value Products line.

Beautyco was a customer of Marianna for many years. Around 1994, Marianna had discussions with Larry Rhodes, the former owner of Beautyco, to create a lower-priced alternative hair care line for Beautyco. Rhodes proposed a product line called GENERIX to be packaged in a bullet-shaped bottle with a black cap and a black-and-white design. Because Marianna believed that the packaging and name for the proposed GENERIX line too closely resembled Sally

Beauty's Generic Value Products, Marianna asked Beautyco to change the proposed packaging. Beautyco refused. Marianna did not produce the line and Beautyco proceeded with production of the GENERIX line with another filler.

Beautyco launched the GENERIX line in 1995 or 1996. The GENERIX shampoo product contains elements similar to the Generic Value Products line. Like the Sally Beauty trade dress, GENERIX uses packaging consisting of a white bullet-shaped bottle with black lettering and a flat, black top. As in the Generic Value Products line, the GENERIX trade dress also compares itself to a name brand salon product on the front of the bottle and contains an ingredient comparison chart on the back of the bottle.

In 1996, Beautyco applied for federal trademark registration of its GENERIX mark. Marianna opposed the application. After settlement negotiations between the parties failed, the Plaintiffs filed suit, alleging federal and state law claims that Beautyco's GENERIX products infringed on Marianna's Generic Value Products trademark, infringed on Sally Beauty's trade dress, and contained false advertising on their labels. Beautyco filed a counterclaim, alleging, *inter alia*, that the Plaintiffs' lawsuit violated Oklahoma antitrust and unfair competition laws. Beautyco moved for summary judgment on the Plaintiffs' claims and the Plaintiffs moved for summary judgment on Beautyco's counterclaims. The district court granted Beautyco's motion for summary

judgment on the Plaintiffs' claims and Plaintiffs' motion for summary judgment on Beautyco's state antitrust and unfair competition counterclaims. The parties cross-appealed from the district court's orders.

## III. STANDARD OF REVIEW

This court reviews the grant of summary judgment *de novo*, employing the same standard applied by the district court. *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999). Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does not bear the burden of proof at trial on a dispositive issue, that party may make such a showing simply by indicating to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. *Id.* at 325. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994). An issue is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We construe the evidence and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant. *King of the Mountain Sports*, 185 F.3d at 1089.

## IV. PLAINTIFFS' APPEAL

### A. Trademark Infringement

Congress has defined a trademark as "any word, name, symbol, or device, or any combination thereof . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Marianna brought a federal trademark infringement claim under 15 U.S.C. § 1114, which prohibits the unauthorized use of a counterfeit or imitation of the registered mark likely to cause confusion in the marketplace concerning the source of the different products. *See* 15 U.S.C. § 1114(1)(a); *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 651 (10th Cir. 1996). In determining whether a likelihood of confusion exists between two marks, this court considers the following nonexhaustive factors: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or

weakness of the marks. *See King of the Mountain Sports*, 185 F.3d at 1089-90. These factors are interrelated and no one factor is dispositive. *Id.* at 1090. In this circuit, likelihood of confusion is a question of fact but one amenable to summary judgment in appropriate cases. *See id.* at 1089 ("Courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion." (alteration and quotation omitted)). If the nonmovant demonstrates a genuine issue of material fact regarding the likelihood of confusion, however, summary judgment is not appropriate. *See id*.

1. Similarity of Marks

The degree of similarity between marks rests on sight, sound, and meaning. *Id.* This court must determine whether the allegedly infringing mark will confuse the public when singly presented, rather than when presented side by side with the protected trademark. *Id.* In so doing, similarities are weighed more heavily than differences, particularly when the competing marks are used in virtually identical products packaged in a similar manner. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986) [hereinafter *Beer Nuts II*].

The district court concluded that the similarity of marks weighed in favor of Marianna. "Generic Value Products," however, is not visually similar to "GENERIX." Marianna's mark consists of three words, while Beautyco's

consists of only one. Although both marks begin with the same six letters, this similarity is not enough to outweigh the visual differences in the marks. [1] *Cf. id.* at 926.

The sound of the marks is also different. "Generic Value Products" does not sound similar to "GENERIX." In considering this subfactor, the district court erred by shortening "Generic Value Products" to simply "Generic" in comparing aural similarities between the marks. The district court cited no authority which would permit the shortening of the trademark for the likelihood of confusion analysis. Marianna relies on *Giant Food, Inc. v. Nation's Foodservice, Inc.*, in support, but that case involved marks consisting of pictorial designs with clearly dominant visual elements. *See* 710 F.2d 1565, 1567, 1570-71 (Fed. Cir. 1983). In this case, however, the Generic Value Products mark consists of words alone and no one word takes precedence over the others.

In contrast, the meanings of "Generic Value Products" and "GENERIX" are similar. Although "GENERIX" has no inherent meaning, Beautyco admits in its motion for summary judgment that the use of the word is obviously intended to

---

[1]Beautyco contends that because Marianna disclaimed the terms "generic" and "products" in its trademark, the only part of Marianna's mark which ought to be considered in a likelihood of confusion analysis is "Value" or "Value Products." In this circuit, however, "the disclaimed material still forms a part of the marks and cannot be ignored in determining likelihood of confusion." *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1531 (10th Cir. 1994) (quotation omitted). We thus consider Marianna's mark in its entirety.

convey the idea that its product is inexpensive. Beautyco further concedes that Sally Beauty's use of "Generic" conveys the same idea. Taken as a whole, Generic Value Products conveys the same meaning as GENERIX.

On balance, the similarity in meaning between the marks favors Marianna, but the differences in both sight and sound favor Beautyco. Although similarities are to be weighed more heavily than differences, the differences in this case are significant enough to lead us to conclude that this factor weighs in favor of Beautyco.

2. Intent to Copy

Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983) [hereinafter *Beer Nuts I* ]. "The proper focus under this factor is whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff." *King of the Mountain Sports*, 185 F.3d at 1091 (quotation omitted). "One who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that the public will be deceived. All doubts must be resolved against him." *Beer Nuts I* , 711 F.2d at 941 (citations and quotation omitted).

In support of the assertion that Beautyco intentionally copied Marianna's mark, Marianna cites to a June 1994 fax written by Beautyco's supplier Charles Coleman to another filler stating that Beautyco "wants to knock-off Sally's Generic line." Coleman explained in his deposition that this statement meant that Beautyco wanted to copy both the product and the packaging of the Generic Value Products line. Marianna also cites to the deposition of Sid Lande, a manufacturer's representative who worked with Marianna on the Generic Value Products line. Lande testified in a deposition that Rhodes said he wanted the GENERIX line to "look like what Sally's doing. . . . [Rhodes] wanted to make it look very similar to what Sally was marketing." Although it is not precisely clear whether Beautyco specifically wanted to copy the Generic Value Products *mark*, as opposed to the line's *trade dress*, a reasonable inference is that Beautyco wanted to copy the whole of the Generic Value Products line. Any doubts about this factor must be resolved against Beautyco. *Beer Nuts I*, 711 F.2d at 941. Viewing the Coleman fax and the Coleman and Lande deposition testimony in the light most favorable to Marianna, a reasonable jury could find that Beautyco intended to copy the Generic Value Products trademark. This factor therefore weighs in favor of Marianna.

3.  Actual Confusion

Although not necessary to prevail on a trademark infringement claim, evidence of actual confusion in the marketplace may be the best indication of likelihood of confusion.  *See King of the Mountain Sports*, 185 F.3d at 1092. Such evidence may be introduced through surveys, although their evidentiary value depends on the methodology and questions asked.  *See Universal Money Ctrs.*, 22 F.3d at 1534 n.3.  Evidence of actual confusion does not create a genuine issue of fact regarding likelihood of confusion if it is  *de minimis*.  *Id.* at 1535.

Marianna cites to a survey conducted by its expert, George Mantis.  The survey reports that out of 180 participants, twelve individuals, or 6.7 percent of the sample, believed that GENERIX and Generic Value Products were manufactured by the same company based solely on similarities in their names. The participants, however, were not shown the trademarks separately from the packaging and bottles.  Mantis admitted that the survey was not designed to test confusion over the trademarks separate from the trade dress.  He further conceded that his survey does not support the conclusion "that Generix as a trademark is confusingly similar or likely to cause confusion to [sic] Generic Value Products." Even if Marianna's expert testimony could be construed as evidence of a likelihood of confusion between the trademarks only, we conclude that such

evidence is *de minimis*. This factor is thus neutral. This court has stated, however, that the "absence of [actual confusion] does *not* necessarily support a finding of *no* likelihood of confusion, especially when the products involved are inexpensive." *Beer Nuts II*, 805 F.2d at 928.

4. Similarity of Products and Manner of Marketing

"The greater the similarity between the products . . ., the greater the likelihood of confusion." *Universal Money Ctrs.*, 22 F.3d at 1532. This court has previously analyzed this factor by separately considering (1) the similarity of products and (2) the similarity in the manner of marketing the products. *See id.* at 1532-33. Here, Beautyco concedes the first factor, that both Generic Value Products and GENERIX are cheaper versions of salon brand hair care products. "Confusing similarity is most likely when the products themselves are very similar." *Beer Nuts I*, 711 F.2d at 941.

In analyzing the similarity in the manner of marketing, this court has previously considered whether the parties were competitors in consumer markets. *See Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 556-57 (10th Cir. 1998); *First Sav. Bank*, 101 F.3d at 656. Beautyco concedes that it and Sally Beauty sell their products at their respective retail stores and that its primary competitor in the beauty salon products business is Sally Beauty. Similar hair care product lines were thus reaching consumers through similar commercial

-13-

channels to the same retail market, the beauty supply trade. *Cf. Heartsprings*, 143 F.3d at 557 (concluding that evidence indicating that parties "operate[d] in distinctly different markets, [sold] distinctly different products, and contact[ed], for the most part, very different people in their marketing efforts" reduced the likelihood of confusion). A consumer who bought either party's products, which are similar in nature and packaging, thus did so in competing retail outlets. Beautyco does not allege that there are differences in the parties' advertising strategies, which could reduce the likelihood of confusion. *See Universal Money Ctrs.*, 22 F.3d at 1532.

Although the district court recognized these "significant similarit[ies]" in the products and marketing, it explained that the products do not compete in the same retail outlets and thus there is little risk of confusion. This court has recognized that "[t]he possibility of confusion is greatest when products reach the public by the same retail outlets." *Beer Nuts I*, 711 F.2d at 941. None of our cases, however, require that the allegedly infringing product be available on the same shelves as the plaintiff's product. *Accord Paco Rabanne Parfums, S.A. v. Norco Enters., Inc.*, 680 F.2d 891, 893 (2d Cir. 1982) (explaining that, in the context of preliminary injunctions, "it is well established that products need not be sold side by side for a plaintiff to show that there is a likelihood of confusion"). As already discussed, the parties had similar and competing

products marketed to consumers through similar commercial channels. Accordingly, this factor weighs in favor of Marianna.

5. Degree of Care Exercised by Consumers

A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusion. *Heartsprings*, 143 F.3d at 557. This court has explained that "buyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse." *Beer Nuts II*, 805 F.2d at 926 (quotation omitted). Accordingly, items purchased on impulse are more likely to be confused than expensive items, which are typically chosen carefully. *See id.* The relevant inquiry focuses on the consumer's degree of care exercised at the time of purchase. *See Universal Money Ctrs.*, 22 F.3d at 1533.

When Beautyco's Rhodes was asked whether GENERIX products were impulse sales, he testified: "Well, I'd say probably the majority of the time the customer wasn't coming in for them. You know, that's kind of what I call an impulse. If the customer wasn't driven to it, then it kind of becomes, oh, I think I'll try that. That's impulse." Rhodes indicated that GENERIX products are impulse items and thus typically purchased with a low degree of consumer care. Contrary to this testimony, however, the district court concluded that this factor weighed in favor of Beautyco. Because the products were sold only in the parties' respective stores, the district court reasoned, a consumer who "uses

enough care to shop at a specialty store would [] also use enough care to remember which specialty store carries its product." Beautyco, however, does not cite to anything in the record to support this conclusion on appeal. Moreover, Rhodes' testimony that "the majority of the time the customer wasn't coming in for [GENERIX products]" belies the district court's conclusion. Viewing this evidence in the light most favorable to the nonmovant, this factor weighs in favor of Marianna.

6.  Strength of the "Generic Value Products" Mark

The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion. *See King of the Mountain Sports*, 185 F.3d at 1093. The categories of trademarks in ascending order of relative strength are: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Heartsprings*, 143 F.3d at 555 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). A generic mark refers to a general class of goods, such as "cola," of which an individual article is but a member. *Beer Nuts I*, 711 F.2d at 939. Such marks do not indicate the particular source of an item and are not entitled to any trademark protection. *Id.* A descriptive mark identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients. *Id.* A descriptive mark may receive protection "only when it has acquired a secondary meaning by becoming distinctive of the

applicant's goods in commerce." *Id.* at 940 (quotation omitted). Suggestive marks "suggest[] rather than describe[] a characteristic of the product and require[] the consumer to use imagination and perception to determine the product's nature." *First Sav. Bank*, 101 F.3d at 655. Arbitrary marks use common words, symbols, and pictures that do not suggest or describe any quality or characteristic of the goods or services. *King of the Mountain Sports*, 185 F.3d at 1093. Finally, fanciful marks are words invented or selected for the sole purpose of functioning as a trademark. *Id.* Suggestive, fanciful, and arbitrary marks are considered inherently distinctive and entitled to trademark protection. *See Two Pesos*, 505 U.S. at 768.

In this case, the Patent and Trademark Office (PTO) granted Marianna's application to register the "Generic Value Products" mark without requiring proof of secondary meaning. Beautyco does not challenge Marianna's argument that the PTO action creates a rebuttable presumption that the mark is inherently distinctive. *See generally GTE Corp. v. Williams*, 904 F.2d 536, 538 (10th Cir. 1990) (citing cases). Beautyco has also failed to cite any evidence that Marianna's mark is generic or descriptive. Rather, Beautyco's only argument is that the Generic Value Products line's prominent use of the word "generic" in its packaging and advertising signals that the mark itself is generic. Merely because a producer manufactures goods which feature the word "generic," however, does

not render the trademark itself generic. Beautyco mistakenly asserts that Marianna's mark identifies only a general class of goods, but the "Generic Value Products" mark does not, by its terms, describe hair care products. Marianna is entitled to a presumption that the Generic Value Products mark is inherently distinctive, one that Beautyco does not rebut. This factor therefore weighs in favor of Marianna.

7. Summary Judgment Inappropriate

Beautyco's intent to copy, standing alone, may be enough to preclude summary judgment in its favor. *See Beer Nuts I*, 711 F.2d at 941. When this court weighs the similarities in products and marketing, the low degree of consumer care, and the relative strength of the Generic Value Products mark into the balance of factors, we conclude that a reasonable jury could return a verdict for Marianna. Although the dissimilarities between the marks favor Beautyco, that factor alone is not dispositive. "It is certainly not necessary to use an exact copy of another's mark for a reasonable buyer to be likely to be confused." *McCarthy on Trademarks* § 23.20. Because Marianna has demonstrated a genuine issue of material fact on the likelihood of confusion, the district court erred in granting summary judgment to Beautyco. [2]

---

[2]In their complaint, Marianna also asserted a trademark infringement claim under Oklahoma common law. The district court concluded that its resolution of

(continued...)

**B. Trade Dress Infringement**

The trade dress of a product is its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques. *Two Pesos*, 505 U.S. at 764 n.1 (quotation omitted). Under § 43(a) of the Lanham Act, a plaintiff has a cause of action against any person whose use of a word, symbol, or device is likely to cause confusion regarding the source or origin of the plaintiff's goods. *See* 15 U.S.C. § 1125(a)(1)(A); *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000). Protection may extend to a single feature or a combination of features in a trade dress. *See Vornado Air Circulation Sys., Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1502 (10th Cir. 1995). In order to demonstrate trade dress infringement for product packaging, the plaintiff must demonstrate (1) that its trade dress is inherently distinctive or has become distinctive through secondary meaning; and (2) likelihood of confusion. *See id.* at 1502-03. In addition, the party asserting trade dress infringement bears the burden of demonstrating that

---

[2](...continued)
the federal trademark claim also disposed of the state claim. Beautyco does not contest this conclusion on appeal or offer any other basis for this court to affirm the district court. Accordingly, this court concludes that the district court's judgment on Marianna's state trademark claim must also be reversed and remanded.

the trade dress is not functional.  15 U.S.C. § 1125(a)(3);  *Samara Bros.* , 529 U.S. at 210. [3]

## 1.  Distinctiveness and Secondary Meaning

A trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source."  *Two Pesos* , 505 U.S. at 768.  Such trade dresses "almost *automatically*  tell a customer that they refer to a brand and immediately signal a brand or a product source."  *Samara Bros.* , 529 U.S. at 212-13 (citation, quotations, and alteration omitted).  Like trademarks, the inherent distinctiveness of a trade dress is categorized along the generic-descriptive-suggestive-arbitrary-fanciful spectrum.  *See Two Pesos* , 505 U.S. at 768.  A trade dress which is not inherently distinctive, however, may acquire distinctiveness through secondary meaning.  *Id.* at 769.  In other words, over time customers may associate the primary significance of a dress feature with the source of the product rather than the product itself.  *See Qualitex Co. v. Jacobson Prods. Co.* , 514 U.S. 159, 163 (1995).  When a trade dress has become distinctive of a product's source, courts have permitted protection under § 43(a) of the Lanham Act.  *See Two Pesos* , 505 U.S. at 769.

---

[3]Beautyco did not assert before the district court that there was no genuine issue of material fact on functionality.  Beautyco therefore waived on appeal its argument that Sally Beauty's trade dress is nonfunctional. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992).

Viewing the evidence in the light most favorable to Sally Beauty, this court concludes that a genuine issue of material fact exists whether Sally Beauty's trade dress is descriptive. A trade dress is descriptive if it "conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976). Sally Beauty's trade dress includes the mark "Generic Value Products," a product comparison to a salon brand product, and side-by-side ingredients listing for the product and the comparable salon brand product. Taken together, a reasonable jury could conclude that these elements immediately convey the qualities and characteristics of the product, *i.e.*, Generic Value Products is a comparable alternative to salon brand products. Indeed, the trade dress includes a textual element called "The Generic Story," which states that Generic Value Products are "as good as the 'higher priced' quality NAME BRANDS" but available at "'Popular Prices.'"

A descriptive trade dress, however, is not entitled to trade dress protection unless it has acquired secondary meaning in the marketplace. *See Two Pesos*, 505 U.S. at 769. Whether a trade dress has acquired secondary meaning is a question of fact and thus generally should not be decided at the summary judgment stage. *See Marker Int'l v. deBruler*, 844 F.2d 763, 764 (10th Cir. 1988). A trade dress acquires secondary meaning when "its primary significance in the minds of potential consumers is no longer as an indicator of something about the product

itself but as an indicator of its source or brand." *Vornado Air Circulation Sys.*, 58 F.3d at 1502; *see also Two Pesos*, 505 U.S. at 766 n.4. "The ultimate inquiry is whether in the consumer's mind the mark denotes a single thing coming from a single source. That single source, however, need not be known by name by consumers." *Stuart Hall Co. v. Ampad Corp.*, 51 F.3d 780, 789 (8th Cir. 1995) (quotations and citations omitted).

Sally Beauty relies on three categories of evidence which it argues establish secondary meaning: (1) a history of successful sales; (2) evidence of intentional copying by Beautyco; and (3) long use of the Sally Beauty trade dress. This court has previously considered proof of intentional copying as relevant to whether a trademark has acquired secondary meaning. *See Marker Int'l*, 844 F.2d at 764. Other circuits have considered the sales volume of the product featuring the trade dress in a likelihood of confusion analysis. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 640 n.14 (6th Cir. 2002); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc*., 269 F.3d 270, 283 n.10 (3d Cir. 2001).

The parties do not dispute that the Plaintiffs have sold millions of dollars of Generic Value Products featuring the Sally Beauty trade dress. Standing alone, sales volume may not be indicative of secondary meaning because it could be related to factors other than source identification. *See Herman Miller, Inc. v.*

-22-

*Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 313-14 (6th Cir. 2001). Sales volume, however, may indicate secondary meaning when presented in conjunction with other evidence. *See id.* Here, Sally Beauty also cites to record evidence which indicates that Beautyco intentionally copied some aspect of the Generic Value Products line. *See* Section IV.A.2, *supra*. Viewing this evidence in the light most favorable to Sally Beauty, we conclude that a genuine issue of material fact exists whether Sally Beauty's trade dress has acquired distinctiveness. [4]

2. Likelihood of Confusion

The factors underlying a likelihood of confusion analysis in a trademark infringement claim apply equally to trade dress infringement claims. *See Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 521 (10th Cir. 1987). In the trade dress context, the relevant inquiry is "whether there is a likelihood of confusion resulting from the total image and impression created by the defendant's product or package on the eye and mind of an ordinary purchaser."

---

[4] Sally Beauty also relies on its long use of the trade dress as additional evidence of secondary meaning. This court has explained, however, that "[t]o acquire secondary meaning, a descriptive mark must have been used so long and so *exclusively* by one producer with reference to his goods" that it has acquired distinctiveness. *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1470 (10th Cir. 1985) (emphasis added) (quotation omitted); *see also* 15 U.S.C. § 1052(f) (permitting Patent and Trademark Office to accept "proof of *substantially exclusive* and continuous use" of mark as *prima facie* evidence of secondary meaning in application for trademark registration (emphasis added)). Sally Beauty offered no evidence below or on appeal that its use of trade dress was substantially exclusive.

*McCarthy on Trademarks* § 8:15. In this case, equally applicable to Sally Beauty's trade dress infringement claim is our discussion in the trademark context on (1) Beautyco's intent to copy; (2) similarity of products and manner of marketing; and (3) degree of consumer care. *See* Section IV.A., *supra*. We address here only the remaining factors of (4) the degree of similarity between the parties' trade dresses; (5) strength of the Sally Beauty trade dress; and (6) evidence of actual confusion.

### a) Similarity of Trade Dresses

Viewing the parties' trade dresses singly, an ordinary consumer would be struck by the high degree of similarity between them. Both trade dresses consist of white, bullet-shaped bottles with flat, black tops. Near the top of the bottles, both dresses have black-and-white trade marks which feature either the word "Generic" or the word "GENERIX" prominently. In the middle of the bottles, each product compares itself to a salon brand product. The back of both bottles list its product's ingredients side-by-side with those of a salon brand product. The overall color scheme of the two dresses consist of black and white; no other color is used in either dress. Although the dresses are not identical, they are remarkably similar. This factor therefore weighs heavily in favor of Sally Beauty.

*b) Strength of Sally Beauty's Trade Dress*

As discussed earlier, a genuine issue of material fact exists that Sally Beauty's trade dress is descriptive and has acquired secondary meaning. *See* Section IV.B.1, *supra.* This court has previously indicated that descriptive marks can weigh against a likelihood of confusion when there exist dissimilarities between the two marks. *See First Sav. Bank*, 101 F.3d at 655 (concluding that bank's use of the words "First Bank" in its service mark is "weakly descriptive" and not confusingly similar when considering the marked differences between its service mark and competing bank's service mark). Although dissimilarities exist between the Generic Value Products dress and the GENERIX dress, they are not as significant as the differences between the marks in *First Savings Bank*. *Cf. id.* at 653. Nevertheless, we conclude that the relative weakness of Sally Beauty's trade dress weighs against a finding of a likelihood of confusion.

*c) Actual Confusion*

In the trade dress context, evidence of actual confusion is not necessary for a finding of likelihood of confusion but "may be the strongest evidence to support such a determination." *Brunswick Corp.*, 832 F.2d at 521. Sally Beauty points to the survey conducted by its expert, George Mantis, which reports that 51 out of 180 participants, or twenty-six percent of participants after adjusting for error, believed that GENERIX was manufactured by Sally Beauty based solely on the

products' packaging or appearances. The survey concludes that "[a] significant number of respondents provide 'package/appearance' related reasons as a basis for their mistaken belief that Generix is put out by the same company that puts out Generic Value Products. . . . Even after adjusting for 'noise,' confusion remains high[,] accounting for more than one out of four respondents." Beautyco's survey is strong evidence of actual confusion between Sally Beauty's and Beautyco's trade dresses. Accordingly, this factor weighs heavily in favor of Sally Beauty.

*d) Conclusion on Likelihood of Confusion*

Based on the strong similarities between the trade dresses, evidence of actual confusion, deposition testimony indicating Beautyco intended to copy the Generic Value Products line, similarity in the products and manner of marketing, and the low degree of consumer care, Sally Beauty has demonstrated a genuine issue of material fact on the likelihood of confusion. That a genuine issue of material fact exists on whether Sally Beauty's trade dress is descriptive does not change our conclusion.

3.  Summary Judgment Inappropriate

Because Sally Beauty has demonstrated a genuine issue of material fact on the distinctiveness of Sally Beauty's trade dress and likelihood of confusion, the district court erred in granting summary judgment for Beautyco. [5]

## C.  False Advertising

The district court granted summary judgment to Beautyco on the Plaintiffs' false advertising claims under the Lanham Act, the Oklahoma Deceptive Trade Practices Act, and Oklahoma's common law of unfair competition.  *See* 15 U.S.C. § 1125(a); Okla. Stat. tit. 78, §§ 51-55.  The Plaintiffs alleged in their complaint that Beautyco's use of the words "generic version of" on its GENERIX packaging gives a false or misleading impression that GENERIX products contain the exact same ingredients as their salon brand counterpart.  In order to succeed on a false advertising claim under § 43(a) of the Lanham Act, the plaintiff must demonstrate:

> (1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause

[5]In their complaint, Sally Beauty also asserted a trade dress infringement claim under the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78 §§ 51-55.  The district court concluded that its resolution of the federal trade dress claim also disposed of the state claim.  Because we conclude that the district court's grant of summary judgment to Beautyco on the federal trade dress claim must be reversed, the state trade dress infringement claim must be reversed and remanded as well.

confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) (citations omitted). The district court concluded, *inter alia*, that the Plaintiffs failed to demonstrate a genuine issue of material fact as to whether Beautyco's use of "generic version of" on its GENERIX products was materially false or misleading. Although the Plaintiffs challenge the district court's conclusions on other elements of the false advertising claim, they make no arguments that Beautyco's product labeling is false or misleading. Because the Plaintiffs have failed to submit any evidence of the falsity of Beautyco's labeling, the district court did not err in granting summary judgment. [6]

## V. DEFENDANT'S CROSS-APPEAL

Beautyco counterclaims that the Plaintiffs brought suit not to redress a legitimate grievance, but to force Beautyco to defend costly litigation as a means to advance the Plaintiffs' commercial interests. Specifically, Beautyco claims

---

[6]Under the Oklahoma Deceptive Trade Practices Act, *prima facie* evidence of a deceptive trade practice exists when a party "knowingly makes a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services." Okla. Stat. tit. 78, § 53(a)(5). Because we conclude that no genuine issue exists on whether Beautyco's representation is false, the district court properly granted summary judgment on Plaintiffs' false advertising claims under the Oklahoma statute. The Plaintiffs have failed to make any argument or cite any cases in support of their common law false advertising claim, and thus the claim is deemed waived.

-28-

that the Plaintiffs' suit violates Oklahoma's law of unfair competition; the Oklahoma Antitrust Reform Act, Okla. Stat. tit. 79, §§ 201-212; and the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, §§ 51-55. The Plaintiffs argue that they are immune from these claims under the *Noerr-Pennington* doctrine or the Petition Clause of the Constitution. *See United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); U.S. Const. amend. I.

We need not address whether the Plaintiffs are immune from liability under the *Noerr-Pennington* doctrine, nor do we need to reach the underlying merits of Beautyco's state claims. Beautyco concedes that if the Plaintiffs prevail on appeal, the Plaintiffs should also prevail on Beautyco's counterclaims. We determined in Sections IV.A. and B., *supra*, that the Plaintiffs' trademark and trade dress infringement claims survive summary judgment. The district court thus properly granted the Plaintiffs' summary judgment motion on Beautyco's counterclaims.

## VI. CONCLUSION

Because the Plaintiffs have demonstrated a genuine issue of material fact on the likelihood of confusion between the marks, we **REVERSE** the district court's grant of summary judgment for Beautyco on Marianna's trademark infringement claim and **REMAND** for further proceedings. We also **REVERSE**

the grant of summary judgment to Beautyco on Sally Beauty's trade dress infringement claim and **REMAND** for further proceedings. This court **AFFIRMS** the grant of summary judgment to Beautyco on the false advertising claims. The grant of summary judgment for Plaintiffs on Beautyco's counterclaims is also **AFFIRMED** .